UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| ANTHONY E. ELLO and | ) | |
|---|---|---|
| EVELYN ELLO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-299-TLS |
| | ) | |
| GARY R. BRINTON and SEVEN | ) | |
| PEAKS MARKETING CHICAGO, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Partial Motion to Dismiss [ECF No. 7] filed on October 6, 2014, by Defendants Gary R. Brinton and Seven Peaks Marketing Chicago, LLC. For the reasons stated in this Opinion and Order, the Court will grant in part and deny in part the Defendants' Motion.

**BACKGROUND**

The Plaintiffs, Anthony and Evelyn Ello, filed this action against the Defendants on August 25, 2014 [ECF No. 1]. Seven Peaks is a limited liability company with its principal place of business in Utah, and Brinton is a Utah resident and member of Seven Peaks. According to the Complaint, in July of 2013, Brinton—on behalf of Seven Peaks— initiated lease negotiations with the Plaintiffs. That same month, Seven Peaks and the Plaintiffs entered into a 13-year written lease agreement, in which Seven Peaks leased commercial property owned by the Plaintiffs and located in Chesterton, Indiana. The Plaintiffs allege, in part, that upon taking possession of the property, Seven Peaks failed to secure a $75,000 security deposit bond. They

further allege that in July of 2014, Seven Peaks vacated the property without notice or explanation to the Plaintiffs, ceased paying rent, and removed fixtures from the property.

The Plaintiffs assert claims of breach of contract (Count I) against Seven Peaks, and fraud (Count III) against both Defendants. The Plaintiffs are also seeking personal liability against Brinton based on the alter ego doctrine (Count II). On October 6, 2014, the Defendants filed a Partial Motion to Dismiss [ECF No. 7] and an accompanying Memorandum in Support [ECF No. 8], arguing that Counts II and III should be dismissed for failure to state a claim. On November 3, 2014, the Plaintiffs filed a Response [ECF No. 11], and on November 25, 2014, the Defendants filed a Reply [ECF No. 18]. The Motion is now fully briefed and ripe for ruling.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in

2

fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Additionally, when pleading fraud, the federal rules set a higher bar. Federal Rule of Civil Procedure 9(b) states that in fraud cases, "a party must state with particularity the circumstances constituting fraud." The Seventh Circuit has stated that Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). To satisfy the requirement of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks removed) (*quoting Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). Stated differently, a plaintiff pleading fraud must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Additionally, "[c]ryptic statements suggesting fraud are not enough." *Graue Mill*, 927 F.2d at 992 (internal quotation marks and citations omitted). "Rather, pleadings must state the 'specific content of the false representations as well as the identities of

the parties to the misrepresentation.'" *Id.* (citation omitted).

Lastly, in ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaint. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Further, in the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, a copy of the written lease agreement between the parties is attached to the Complaint and the Defendants' Partial Motion to Dismiss. Because the lease agreement is an exhibit to the Complaint and is also central to the Plaintiffs' claims of breach of contract and fraud, the Court will consider the lease agreement as part of the pleadings.

## DISCUSSION

**A.     Governing Law**

The Plaintiffs' claims are before this Court under its diversity jurisdiction. "A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits," *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994)), including the state's conflict rules. *Land*, 272 F.3d at 516. However, parties may generally choose the law that will govern their agreements, *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999),

4

and Indiana choice of law doctrine favors contractual stipulations as to the governing law. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).

The parties' lease agreement provides that it "shall be governed by the laws of the State of Utah." Compl. 18, ¶ 22.7. Neither party disputes that Utah law applies to the Plaintiffs' breach of contract and alter ego claims. As for the fraud claim, the Plaintiffs contend that Indiana law applies, while the Defendants contend that Utah law applies pursuant to the lease agreement. Generally, a choice of law provision "will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended." *Kuehn v. Childrens Hosp., L.A.*, 119 F.3d 1296, 1302 (7th Cir. 1997); *see also WRM Am. Indem. Co., Inc. v. Siemens Bldg. Tech., Inc.*, No. 2:12-CV-73, 2012 WL 6045157, at *2 n.1 (S.D. Ind. Dec. 5, 2012); *Estate of Knox v. Wheeler*, No. 2:05-CV-19, 2005 WL 2043787, at *7 (N.D. Ind. Aug. 25, 2005). Here, the lease agreement offers no clear indication that the parties intended Utah law to govern both tort and contract claims. As a result, the parties have not stipulated to the law governing the Plaintiffs' fraud claim, thus requiring the Court to apply Indiana choice of law analysis.

As a preliminary matter, the first step is to determine whether the difference between the laws of the states are "important enough to affect the outcome of the litigation." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (internal quotation marks and citation omitted). If there is no conflict between the purpose or policy of the laws of the two states, a false conflict exists, and the forum should apply forum law. *See Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n.1 (Ind. Ct. App. 1990) (*citing* E. Scoles and P. Hay, Conflict of Laws § 17.32 (1984 Ed.)). In addition, the forum law will be applied if neither party raises a conflict of law issue. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). Because neither party has identified a

conflict between the laws of Indiana and Utah, and the outcome does not appear to differ depending on the applicable state law, the Court will apply Indiana substantive law to the Plaintiffs' fraud claim.

B.     **Alter Ego Liability (Count II)**

In Count II of their Complaint, the Plaintiffs seek personal liability against Brinton for the obligations of Seven Peaks under the alter ego doctrine. "The alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012). "If a party can prove its alter ego theory, then that party may pierce the corporate veil and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity." *Id.* (internal quotation marks omitted). Utah Courts have found that the alter ego doctrine applies to limited liability companies. *See, e.g.*, *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 150 n.5 (Utah Ct. App. 2015); *d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 523 (Utah Ct. App. 2006); *Dygert v. Collier*, No. 20020878-CA, 2004 WL 253554, at *1 (Utah Ct. App. Feb. 12, 2004).

The Defendants argue that Count II should be dismissed because alter ego is a theory of liability, and not an independent cause of action. Def's Mem. in Supp. of Partial Mot. to Dismiss 8 (*citing Bushnell v. Barker*, 274 P.3d 968, 971 (Utah 2012) ("An alter ego claim is not itself a claim for substantive relief . . . but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.")) But as noted in *Bushnell*, a plaintiff may properly plead an alter ego theory if

evidence is put forth establishing an independent basis to hold the corporate entity liable. *Id.* at 971 n.2. Here, the Plaintiffs have properly pled a breach of contract claim against Seven Peaks—a claim in which the Defendants are not seeking dismissal. Because the Plaintiffs have established an independent basis to hold Seven Peaks liable, dismissal of the alter ego claim is not warranted under the reasoning in *Bushnell*.

Alternatively, the Defendants argue that dismissal is appropriate because the Utah Revised Limited Liability Company Act shields LLC members—such as Brinton—from personal liability for company acts. Utah Code Ann. § 48–2c–104 (2002). The Defendants specifically cite *Dygert*, which held that "[a]bsent any allegation claiming that [LLC members] did something separate or distinct from the acts of the LLC, [they] may not be held liable for the acts done solely on behalf of the LLC." 2004 WL 253554, at *1. According to the Defendants, because the Plaintiffs' Complaint does not allege that Brinton "did something separate or distinct from the acts of the LLC," he "may not be held liable for the acts done solely on behalf of Seven Peaks." Def's Mem. 10 (brackets and citations omitted). But again, the Plaintiffs are seeking to hold Brinton personally liable under the alter ego doctrine, which is an "exception to the general rule that limits stockholders' liability for obligations of the corporation," *Lowry*, 284 P.3d at 635, and is a doctrine that applies to LLCs, *see, e.g.*, *Bear Hollow Restoration, LLC*, 344 P.3d at 150 n.5; *d'Elia*, 147 P.3d at 523; *Dygert*, 2004 WL 253554, at *1. In fact, the *Dygert* court itself found that no liability existed because, in part, the plaintiffs "have not attempted to pierce the corporate veil." 2004 WL 253554, at *1.

Thus, to survive dismissal, the Plaintiffs must set forth sufficient facts to meet the Utah Supreme Court's two prong-test to determine when a party may pierce the corporate veil: "(1)

7

there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist . . . and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). In making this determination, Utah courts looks to a set of eight, non-exclusive factors:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Lowry*, 284 P.3d at 636 (*citing Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987) ("[I]t is possible that evidence of even one of the *Colman* factors may be sufficient to suggest both elements of a party's alter ego theory.").

The Plaintiffs allege that Seven Peaks did not observe corporate formalities or maintain accurate records; that Seven Peaks and nearly 20 separate entities are listed as having the same address and are sharing employees; and that Brinton maintains "exclusive control over all the money and assets of all the entities." Compl. ¶ 39. The Plaintiffs also assert that Brinton "does not keep his businesses or their cash and assets separate," but "[i]nstead, he intermingled cash, employees, and assets to such a degree that their separate corporate personalities ceased to exist." *Id.* ¶ 42.

When accepting as true all well-pleaded facts and drawing all permissible inferences in the Plaintiffs' favor, the Court finds that sufficient facts have been pled to suggest a unity of interest and ownership between Seven Peaks and Brinton. *See Berrios-Bones v. Nexidis, LLC*,

No. 2:07CV193DAK, 2007 WL 3231549, at *9 (D. Utah Oct. 30, 2007) ("Alter ego is a highly fact intensive issue and inappropriate to resolve at the motion to dismiss stage"); *White Family Harmony Inv., Ltd. v. Transwestern West Valley, LLC*, No. 2:05CV495DAK, 2005 WL 2893784, at *5 (D. Utah Oct. 31, 2005) ("[The Plaintiff] is not required to prove its alter ego claim in order to defeat a motion to dismiss or to set forth detailed factual allegations supporting its alter ego theory.") As such, the Plaintiffs' alter ego claim survives dismissal, and the Defendants' motion to dismiss on Count II is denied.

### C.  Fraud (Count III)

The Plaintiffs also assert a fraud claim against both Defendants. To establish fraud, a plaintiff must show that a defendant made a false material representation of past or existing fact, with knowledge or reckless ignorance of its falsity, which caused reliance to the detriment of the person relying on the representation. *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995). "[A]ctual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Comfax Corp. v. N. Am. Van Lines, Inc.* 587 N.E.2d 118, 125 (Ind. Ct. App. 1992); *see also Ruse v. Bleeke*, 914 N.E.2d 1, 10 (Ind. Ct. App. 2009).

The Plaintiffs contend that the Defendants made the following false representations during the lease negotiations: Seven Peaks would (1) "secure the seventy-five thousand dollar bond as required in the lease agreement"; (2) "pay all rent, taxes, assessments, and fees associated with the Property for the duration of the Lease"; (3) "carry the proper insurance for the duration of the Lease"; (4) "keep the Property in good repair and not remove fixtures"; and

9

(5) "run the Property as a bowling establishment for the duration of the Lease." Compl. ¶ 49. The Plaintiffs further allege that they relied upon these representations and were "induced" to enter the lease agreement based on these representations. *Id.* ¶ 54. However, such allegations paint a scenario of broken promises, which sound in contract, not fraud. *See, e.g.*, *McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998) (holding that a claim under the Indiana Deceptive Consumer Sales Act based on fraud was deficient where allegations that defendant made promises in the form of warranties and guarantees and then failed to perform because "[a] promise can be made without knowledge or reason to believe that it will be broken, but a statement that is false for purposes of the Act must be false when made"); *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008) ("An action for fraud cannot be based on broken promises or statements of existing intent that are not executed.") (*citing Kopis v. Savage*, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986).

The Plaintiffs also allege that the Defendants represented that Seven Peaks "planned to stay at the Property for the duration of the lease and build good will in the community," and "planned to collaborate with the nearby water park in order to generate more business." Compl. ¶ 49. Once again, such statements appear to pertain to future conduct—not past or existing facts. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F. Supp. 2d 1076, 1089 (S.D. Ind. 2007) ("Past or existing facts means those facts which at the time they are uttered are susceptible to exact knowledge. [T]his definition . . . excludes statements of opinion, intent, or promises of future conduct." (citations and internal quotation marks omitted)). The Plaintiffs argue that such representations are based on past or existing fact because "Brinton knew at the time he entered the Lease Agreement . . . that if a better location came along he would abandon

10

the Property and breach the Lease Agreement." Pl's Resp. 10. But as the Defendants correctly note, such assertions—absent any additional facts—do not "raise a right to relief above [a] speculative level," *Twombly*, 550 U.S. at 555, and thus, fail to show fraudulent conduct under Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b).

Additionally, the Plaintiffs' fraud claim is not pled with "particularity." *See id.* (requiring that all averments of fraud be stated with "particularity"). To satisfy the requirements of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom*, 20 F.3d at 777; *Uni\*Quality*, 974 F.2d at 923. The Plaintiffs' Complaint does not provide this level of detail, assigning no specific identity to the speaker, the manner or place of the communication, or content of the misrepresentation.

Accordingly, the Plaintiffs' fraud claim must be dismissed because there is no false representation of a past or existing fact, nor facts that are sufficiently pled with "particularity." Fed. R. Civ. P. 9(b). Count III will be dismissed without prejudice, with leave to refile if the Plaintiffs are able to successfully amend their complaint consistent with this Order within 14 days of the date of this Order. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule

is that "the district court should grant leave to amend after granting a motion to dismiss").[1]

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Partial Motion to Dismiss [ECF No. 7]. Count III is DISMISSED WITHOUT PREJUDICE, with leave to refile within 14 days of the date of this Order.

SO ORDERED on May 13, 2015.

                                             s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT
                                             FORT WAYNE DIVISION

---

[1] The Plaintiffs are also seeking punitive damages. Because the Plaintiffs' fraud claim is dismissed under Rule 12(b)(6), the Plaintiffs cannot recover punitive damages absent the filing of an amended complaint consistent with this Order. *See Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind. 1993) ("[I]n order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded"); *see also TruGreen Co., L.L.C. v. Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008) ("punitive damages for breach of contract, by themselves, are inappropriate even if intentional and unjustified. Such damages are only allowable if there is some independent tort indicating malice, fraud or wanton disregard for the rights of others.") (internal quotation marks, brackets, and citation omitted).