UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ANTHONY E. ELLO and | ) | |
| EVELYN ELLO, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| GARY R. BRINTON and | ) | |
| SEVEN PEAKS MARKETING | ) | |
| CHICAGO, LLC, | ) | |
|     Defendants, | ) | |
| _____ | ) | CAUSE NO. 2:14-CV-299-TLS-JEM |
| | ) | |
| SEVEN PEAKS MARKETING | ) | |
| CHICAGO, LLC, | ) | |
|     Counter-Claimant, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| ANTHONY E. ELLO and | ) | |
| EVELYN ELLO, | ) | |
|     Counter-Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Quash Time-Barred Subpoenas and for a Protective Order [DE 59], filed by Defendants Gary Brinton and Seven Peaks Marketing Chicago, LLC, (SPMC) on July 14, 2016, and on a Motion for Sanctions and to Re-Open Discovery for a Limited Purpose [DE 61], filed by Plaintiffs Anthony E. Ello and Evelyn Ello on July 15, 2016.

**I.    Background**

This case arises out of a dispute concerning a lease between Plaintiffs and Defendants for a bowling alley in Indiana. Plaintiffs allege that Defendants improperly terminated the lease in June 2014 and seek damages from both SPMC and Defendant Brinton. Even though Defendant Brinton was not personally a party to the lease, Plaintiffs allege that he is nonetheless personally liable for

Plaintiffs' claims against SPMC because he failed to observe corporate formalities in operating SPMC.

On June 30, 2016—one day before the close of discovery—Plaintiffs issued the following four subpoenas:

1. A subpoena to King & McCleary, LLC, Defendants' accountants in Utah, requesting all documents relating to Defendant Brinton, including but not limited to tax returns and financial statements for the years 2012-2015; all documents relating to several non-party entities Plaintiffs allege Defendant Brinton owns; and all documents relating to SPMC, including tax returns, financial documents, company filings, and loan applications for the years 2012-2015.

2. A subpoena to Bryan Ottley, an employee of Chase Bank in Utah, requesting all documents relating to Defendant Brinton for the years 2012-2015; all documents relating to the several non-party entities Plaintiffs allege Defendant Brinton owns; and all documents relating to SPMC from 2012 to the present.

3. A subpoena to the Secretary of State, Division of Corporation and Commercial Code requesting all documents relating to Defendant Brinton, including tax returns and financial statements, for the years 2013-2014; all documents relating to the non-party entities Plaintiffs allege Defendant Brinton owns; and all documents relating to SPMC, including all filings for the years 2013-2014.

4. A subpoena to Horizon Bank, a bank in Indiana, requesting all documents relating to Defendant Brinton, including personal financial statements, loan applications, and "supporting documentation"; and all documents relating to SPMC, including but not limited to financial statements, loan applications, and "supporting documentation."

*See* DE 61-13.

## II. Local Rule Compliance

In briefing and filing their motions, both sides frequently violated the Northern District of Indiana's Local Rules and the guidelines established in the CM/ECF User Manual. For example, Local Rule 7-1(e) provides, "Supporting and response briefs . . . ordinarily must not exceed 25 pages," yet Defendants' response to Plaintiffs' Motion for Sanctions is almost 40 pages. Defendants also included a "motion" for leave to exceed the page limit as an attachment to the response, *see* DE

81-4, in violation of Rule 7-1's command that motions be filed separately.

Similarly, Plaintiffs filed a "Motion for Sanctions and to Re-Open Discovery for a Limited Purpose" containing two separate requests. *See* N.D. Ind. L.R. 7-1. Plaintiffs' counsel also failed to file a certification that he met and conferred with Defendants' counsel in an attempt to resolve the discovery disputes before filing the discovery motion. *See* N.D. Ind. L.R. 37-1 ("A party filing *any* discovery motion must file a separate certificate that the party has conferred in good faith . . . with other affected parties in an effort to resolve the matter.") (emphasis added).

However, in the interest of justice, the Court will consider the merits of the parties' arguments notwithstanding the parties' failure to comply with the Local Rules. The Court **CAUTIONS** the parties that future filings that do not comply with the Local Rules and the CM/ECF User Manual may be denied on that ground.

### III. Defendants' Motion to Quash & Plaintiffs' Motion to Re-Open Discovery

In their Motion to Quash, Defendants ask the Court to quash the four subpoenas on several grounds, including that the subpoenas are untimely. Plaintiffs provide some argument against quashing the subpoenas, but they also filed a Motion to Re-Open Discovery in an attempt to cure the subpoenas' timeliness problem.

#### A. Discovery Deadline

Defendants argue that the subpoenas Plaintiffs issued on June 30 were untimely because they were served only one day before the July 1, 2016, discovery deadline, with a response date of July 15, 2016. As a result, Defendants say, the Court should quash the subpoenas because they improperly required compliance two weeks after the discovery deadline. *See Gordon v. Northeastern REMC*, No. 1:02-CV-171, 2003 WL 21919179, at *2 (N.D. Ind. June 2, 2003) ("Discovery requests

3

not filed in sufficient time to allow the opponent to respond within the discovery period are untimely and the opponent is under no duty to comply."); *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 123 (N.D. Ind. 2001) ("In short, Rule 45 Subpoenas . . . are subject to the same time constraints that apply to all of the other methods of formal discovery.").

Plaintiffs do not contend that the subpoenas were timely. Instead they argue that "the subpoenas were issued [on June 30, 2016,] due to the delay tactics of Defendants and their improper and untimely supplementation of the Rule 26 disclosures." DE 64 at 2. Regarding the alleged "delay tactics," Plaintiffs argue that their attorney attempted to schedule various depositions as early as April 2016, but due to multiple scheduling conflicts with Defendants' schedule the depositions were not conducted until the very last week of discovery. Information gleaned from these depositions, Plaintiffs say, called for more discovery.

Plaintiffs also argue that at "the eleventh hour in the discovery process," Defendants supplemented their initial disclosures. A review of the supplemental disclosures, dated two days before the close of discovery, shows that Defendants disclosed "documents regarding Seven Peaks Marketing Chicago, L.C.'s legal status, formation, membership, bank accounts, inner workings, payroll companies, tax returns and other financial data." DE 61-8. These documents were not listed in Defendants' original January 2016 disclosures. *See* DE 61-10.

Put simply, Plaintiffs ask for more time to complete discovery. Under Federal Rule of Civil Procedure 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . before the original time or its extension expires . . . or on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). To determine whether a party's neglect in allowing the discovery deadline to expire was

4

excusable, the Court must take "into consideration all relevant circumstances including the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005) (quotations and citations omitted).

Plaintiffs' Motion to Re-Open Discovery was filed on July 15, 2016, two weeks after discovery closed. So the Court must determine whether Plaintiffs failed to act within the discovery period because of "excusable neglect." Fed. R. Civ. P. 6(b)(1). Plaintiffs blame Defendants' late disclosures and deposition scheduling as the reasons for Plaintiffs' delay in issuing the subpoenas and requesting more time for discovery.

The documents Plaintiffs seek through the subpoenas, however, are documents Plaintiffs should have known they needed the day they filed their original complaint in August 2014. Plaintiffs' Complaint [DE 1] and their Amended Complaint [DE 24] both allege that Defendant Brinton ignored corporate formalities in running SPMC, meaning he might be held personally liable for Plaintiffs' alleged damages. Indeed, Plaintiffs acknowledge that the documents they seek through the subpoenas are "related to Defendants' operation of their corporate entities and allegedly commingled assets." DE 65 at 3. Why Plaintiffs did not seek documents concerning Defendant Brinton's relationship with SPMC long before the discovery deadline is unclear. Defendants assert, and Plaintiffs do not disagree, that Plaintiffs did not seek *any* discovery before the depositions in the final week of June.

On the other hand, Defendants did supplement their initial disclosures the very week that discovery was set to close. The supplemental disclosures included information about documents

5

relevant to Plaintiffs' alter ego theory of liability, namely the documents concerning SPMC's operations and finances. Furthermore, an email exchange between Defendants' counsel and Plaintiffs' counsel shows that Plaintiff tried to schedule Defendant Brinton's deposition as early as April, but Defendants' counsel asked that the deposition be rescheduled and further delayed in responding to Plaintiffs' counsel's requests for possible dates. *See* DE 61-14. Had the deposition been conducted sooner, Plaintiff might have had an opportunity to follow up with appropriate discovery requests before the discovery period expired.

When Defendant Brinton's deposition was finally taken on June 27, 2016, he repeatedly refused to testify about SPMC's inner workings, arguing that he was not noticed as a designated witness under 30(b)(6) and was testifying as an individual rather than as the limited liability company's representative. *See generally* DE 61-2. Indeed, the notice for Defendant Brinton's deposition did not "describe with reasonable particularity" that Defendant Brinton would be questioned about SPMC's inner workings and finances as required by Rule 30(b)(6). *See* DE 81-1.

However, counsel for Defendants acknowledges that she received a 30(b)(6) notice from Plaintiffs' on May 11, 2016. DE 81 at 23. The notice scheduled the deposition of the "person most knowledge of the formation, organization, and corporate structure of Seven Peak (sic) Marketing, LLC" for "Monday, June 21, 2016 at 1:00 p.m." DE 81-1. Plaintiffs sent the 30(b)(6) notice along with deposition notices for Scott Brinton and Matthew Phair—two other witnesses in this case. DE 81 at 23. The parties eventually rescheduled the depositions for the last week of June, causing Plaintiffs' counsel re-noticed the depositions. *See* DE 61-14. But Plaintiffs' counsel did not re-notice a deposition for a SPMC representative, instead noticing Defendant Brinton only in his individual capacity. DE 81-1.

6

The parties disagree on why Defendant Brinton was not re-noticed to testify as a representative of SPMC. Plaintiffs' counsel asserts that Defendants' counsel told him Defendant Brinton would testify in both his individual and representative capacity at the June 27 deposition. Plaintiffs' counsel went so far as to ask Defendant Brinton if he had ever seen the 30(b)(6) notice for the previously scheduled June 21 deposition. DE 61-2. Defendants' counsel says that she never told Plaintiffs' counsel that Defendant Brinton would be available as both as an individual and a company representative. DE 81 at 23.

In any case, Defendant Brinton did testify generally about SPMC, but he declined to go into any meaningful detail, in effect denying Plaintiffs an opportunity to analyze the merits of their alter ego theory of liability. And Defendants did not seek to stop the deposition "to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion" to terminate or limit the deposition under Rule 30(d)(3). Fed. R. Civ. P. 30(c)(2). To make matters worse, discovery closed only three days after Defendant Brinton's deposition, leaving insufficient time for Plaintiffs to re-notice him as a 30(b)(6) witness.

Although Plaintiffs could have acted earlier in seeking information about SPMC's business information, Defendants' delay in scheduling key depositions and in disclosing important information justifies extending the discovery deadline. Plaintiffs tried to depose Defendant Brinton earlier, but Defendants asked that the depositions be delayed. And the confusion about whether Defendant Brinton would or would not testify about SPMC's inner workings, coupled with how close to the deadline his deposition was scheduled, prevented Plaintiffs from discovering information important to their alter ego theory of liability.

Furthermore, Plaintiffs had no control over when Defendants decided to supplement their

7

disclosures. This is the strongest justification for extending discovery. Allowing discovery to close despite Defendants' late disclosure would deny Plaintiffs the opportunity to fully determine how Defendants' disclosure affects their case.

Accordingly, the Court finds that Plaintiffs' neglect was excusable and finds good cause to extend the discovery deadline. Although Plaintiff asked the Court to reopen discovery for a "limited purpose" without a definite end date, the Court declines to leave the parties without a definitive close of discovery. Accordingly, the Court extends the discovery deadline to March 31, 2017. *See* Fed. R. Civ. P. 6(b)(1).

As discussed below, whether the subpoenas are invalid as a matter of law is a question for another court. Even if the subpoenas are invalid, the parties may continue to engage in other forms of discovery consistent with the limitations set forth in the parties' 26(f) Report [DE 47] and this Court's previous discovery orders. To conserve judicial resources, Plaintiffs may wish to voluntarily withdraw their subpoenas to pursue other more efficient means of obtaining the information sought in the subpoenas.

B.   Notice

Defendants also argue that the subpoenas did not comply with the notice requirements of Federal Rule of Civil Procedure 45 in that Defendants did not receive notice of the subpoenas until July 5, 2016—five days after the subpoenas were served on the non-parties. Plaintiffs do not respond Defendants' notice arguments.

Rule 45(a)(4) provides, "If the subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." The purpose

8

of the notice requirement is to "enabl[e] other parties to object or to serve a subpoena for additional materials." Fed. R. Civ. P. 45, Advisory Committee Notes.

Counsel for Defendants represents that she could not locate binding authority concerning what the Court should do in light of Plaintiff's failure to provide proper notice under Rule 45(a)(4). The Court's own review of relevant case law reveals differing outcomes. *Compare Duke v. Performance Food Grp., Inc.*, 594 Fed. Appx. 829, 832 (5th Cir. 2014) ("The district court did not abuse its discretion by admitting documents obtained by serving a subpoena without notice to the opposing party."), *and Fujikara Ltd. v. Finisar Corp.*, No. 5:13-CV-03345, 2015 U.S. Dist. LEXIS 135871, at *12-13 (N.D. Cal. May 14, 2015) (declining to quash subpoenas for failure to give prior notice because there was no prejudice from the "technical violation"), *with Deuss v. Siso*, No. 14-CV-710, 2014 WL 4275715, at *11 (N.D. Cal. Aug. 29, 2014) (quashing a subpoena for failure to give opposing party prior notice under Rule 45(a)(4)).

In this case, Defendants received notice of the subpoenas five days after they were served. Nine days after receiving the notice of the subpoenas, Defendants objected to them via their Motion to Quash. Nothing suggests that Plaintiffs received any documents in response to the subpoenas. A lack of prejudice by a failure to comply with Rule 45(a)(4) might not always save a non-compliant party's subpoenas, but in this case Plaintiffs' failure to notify Defendants was truly harmless. In light of this harmlessness, quashing the subpoenas for improper notice is unnecessary. *Fujikura*, 2015 U.S. Dist. LEXIS 135871 at *12 (noting that several courts have declined to quash subpoenas for failure to give proper notice where the opposing party ultimately has some "notice and sufficient time to object").

C. Substantive Objections

Defendants also object to the subpoenas on substantive grounds. But these objections are not properly before the Court. Many of Defendants' objections were included in footnotes and attached as exhibits, often including arguments on the subpoenaed non-parties' behalf. But Defendants do not have standing to raise these objections. *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2nd Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013) ("The law is clear that generally, a party does not have standing to quash a subpoena to a non-party."); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2459 (3d ed.) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

Defendants *do* generally have standing to assert their privilege objection. *Parker*, 291 F.R.D. at 186. But Defendants' privilege objection is likewise not properly before the Court. Federal Rule of Civil Procedure 45(c)(3)(A)—the section under which Defendants object—explicitly says, "On timely motion, *the court for the district where compliance is required* must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." (emphasis added).

There is some question as to where "compliance is required" by the subpoenas under Rule 45. The Utah subpoenas[1] purport to command documents to be produced at "Konicek & Dillon, 21

---

[1] There is another subpoena—the Horizon Bank subpoena—that sought documents from Horizon Bank in Indiana. However, because Defendants do not contest the Horizon Bank subpoena and because no non-party objected to that subpoena, its purported place of compliance is irrelevant to this discussion.

W. State Street, Geneva, IL 60134," the offices of Plaintiffs' counsel. The authority defining the place of compliance is mixed. Some courts have suggested that compliance is required where the subpoenaed person resides. *See, e.g.*, *Agincourt*, 2014 WL 4079555 at *4 ("Rule 45 makes clear that the place of compliance is tethered to the location of the subpoenaed person."). Other courts have held that the place of delivery determines the place of compliance. *See, e.g.*, *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-CV-2843-M-BN, 2014 WL 4055372, at *1 (N.D. Tex. Aug. 15, 2014) ("The subpoena commanded C. Jim Romig to produce documents in Dallas, Texas. As such, although the subpoena was served on Mr. Romig in Louisiana, the district court for the Northern District of Texas is the proper court in which to seek relief because the subpoena, by its terms, required compliance in Dallas, Texas.").

In any event, the contested Utah subpoenas require compliance in either the Northern District of Illinois or the District of Utah, but not in this district. So, at this time,[2] the Court lacks jurisdiction to rule on whether the subpoenas should be quashed. *See Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-CV-0708, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("[W]hen a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion."). Similarly, as discussed above, the Court cannot address the subpoenaed non-parties' objections currently on the docket as attachments to Defendants' briefing. Subpoenaed non-parties must comply with Rule 45(d) to raise their objections in the appropriate court, and Defendants cannot object on their behalf.

---

[2] Federal Rule of Civil Procedure 45(f) states, "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." These "exceptional circumstances" including avoiding "disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion." Fed. R. Civ. P. 45(f), Advisory Committee Notes. So these issues might return to this Court.

**IV.    Defendants' Motion for a Protective Order**

Defendants argue that they are entitled to a protective order "protecting their confidential, private financial information from being produced under the invalid subpoenas." DE 60-1 at 13. Defendants also contend that the subpoenas are overly broad.

However, the Court declines to rule on these issues until any objections or motions to quash filed in an appropriate court have been resolved. Were the Court to enter a protective order before another Court ruled on the validity of the subpoenas, the practical effect would be to quash the subpoenas. This would circumvent the clear procedures for objecting to and moving to quash subpoenas under Rule 45, and would gut Rule 45's goal of having courts in the subpoena's place of performance determine privilege and burden issues. Fed. R. Civ. P. 45, Advisory Committee Notes ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements of Rule 45(d) and (e)."). This is especially true where, as here, the motion for a protective order does little more than rehash arguments clearly within Rule 45's reach.

Accordingly, Defendants may refile their motion for a protective order in this Court after an appropriate court resolves any objections or motions to quash.

**V.    Plaintiffs' Motion for Sanctions**

Plaintiffs ask the Court to sanction Defendants and their counsel for inappropriate conduct during discovery. Plaintiffs argue that counsel for Defendants made inappropriate objections during depositions, attempted to disrupt depositions, and took an excessive number of breaks to "coach" witnesses during depositions. Plaintiffs also argue that Defendants improperly delayed turning over important discovery information until the very end of discovery. Defendants respond that Plaintiffs

have misrepresented what took place during various depositions, and Defendants threaten to file their own motion for sanctions against Plaintiffs and their counsel.

A party may object during a deposition but "the examination still proceeds; the testimony is taken subject to any objection" and a "person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion" to terminate or limit the deposition. Fed. R. Civ. P. 30(c)(2). "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Plaintiffs provided complete transcripts of six depositions taken in this case, including Plaintiffs' and Defendant Brinton's. The Court has reviewed each of those transcripts. The following quotations, taken from Defendant Brinton's deposition, typify the conduct Plaintiffs complain about. To show Defendant Brinton's evasive behavior, Plaintiffs cite the following exchange, in which Defendant Brinton claimed not to know information about his interest in various limited liability companies:

> [DEFENDANT BRINTON]: Counsel, you noticed me up for my personal deposition, and I'm prepared to testify on my personal knowledge, but on all of these entity issues, I'm not prepared to answer all those questions because I wasn't noticed up for any of those issues. I don't know the answers.
>
> [PLAINTIFFS' COUNSEL]: Well, I'm asking you as an individual, sir.
>
> A: Don't know the answer.
>
> Q: Okay.
>
> A: But if it sounds like I don't know what I'm doing, it's because I didn't know you were going to ask me all these questions about other stuff like that.

13

Q: You have interests individually in a number of corporations, correct?

A: Not corporations, Counselor.

Q: Okay, well how would you refer to the–

A: Limited liability companies is what they are.

Q: All right [sic]. So you have an interest in a number of limited liability companies, correct?

A: I'm not prepared to testify about that today. I'm here as an individual.

Q: I'm asking you as an individual, sir, do you have an interest in a number of limited liability companies, yes or no?

A: Asked and answered. Yes, I believe I do.

Q: Okay. All right. And tell me, back in 2013, what limited liability companies you had an interest in. We know one is Seven Peaks Marketing Chicago, L.C., right?

A: I'm not prepared to answer that question today, Counselor. I don't know the answer to that.

Q: Just so I know this, because I'm going to have to put this in front of–are you refusing to answer whether or not you had an interest in 2013 in an entity called Seven Peaks Chicago L.C.–Marketing–

[DEFENDANTS' COUNSEL]: Asked and answered.

THE WITNESS: I already answered. Yes, I have an–

[DEFENDANTS' COUNSEL]: Asked and answered.

THE WITNESS: –interest in that one.

Q: And what–what other companies, limited liability corporations, whatever you want to call them, entities, did you have an interest in back in 2013?

A: And I'm just not prepared to answer that question today. I–not prepared to answer that question.

Q: All right. Well, let's go back to the present time then, today. What other entities, limited liability companies, or corporations do you have an interest in today?

> A: Man, again, I'm just not prepared to answer that question. I apologize.
>
> Q: What do you mean you're not prepared to answer the question?
>
> A: I don't know the answer to that question.
>
> Q: So just–so as we sit here today, you have no idea what other companies, LLCs, S Corps, C Corps, corporate entities you have an interest in; is that correct?
>
> [DEFENDANTS' COUNSEL]: Objection; argumentative, asked and answered.
>
> A: Without refreshing my memory, that's correct. I don't have information to answer that question.

DE 61-2, 23:1-26:4. Later, Defendant Brinton preemptively announced that he would not know the answers to questions that had not yet been asked:

> Q: Okay. All right. And here's what I'm going to do just to try to move this along. I'm going to start naming these companies. You just tell me whether you are a member or manager and whether it's accurate as to where the mail is received. Okay?
>
> A: My answer is going to be I don't know.
>
> Q: How do you know? I haven't even asked you the question yet. You're telling me ahead of time?
>
> A: I am.

61-2, 88:7-17. Eventually, Defendant Brinton's answers grew internally inconsistent:

> Q: Okay. Shiloh Place, L.C., S-h-i-l-o-h, were you ever a manager of that company or member, sir?
>
> A: I don't recall.
>
> Q: Have you ever heard of Shiloh Place, L.C.?
>
> A: I've heard of it.
>
> Q: How have you heard of it?
>
> A: It was a battleground of the Civil War.

15

> Q: That's how you know it of [sic]?
>
> A: That's how I know the name Shiloh.
>
> Q: Okay. Did you ever name one of your companies after that battleground from the Civil War, Mr. Brinton?
>
> A: I believe Charles Hanna, my lawyer did, because he loves the Civil War.
>
> Q: Okay. And you had an interest in that company, Shiloh Place, L.C., right?
>
> A: I don't know sitting here today.

DE 61-2, 92:2-19.

Plaintiffs also argue that Defendants' counsel used improper "speaking objections," meaning she supplemented her objections with argument or other commentary. *See* Fed. R. Civ. P. 30(c)(2) ("[O]bjections must be stated concisely in a nonargumentative and nonsuggestive manner."). To support this, Defendants cite the following example—among several other similar quotations—also taken from Defendant Brinton's deposition:

> Q: In all of those companies I just mentioned, Mr. Brinton, the business address was 3214 North University Avenue, Suite 615, Provo, Utah 84604 at some point in time, correct?
>
> A: Incorrect.
>
> Q: Why is that incorrect? I thought you didn't know if you had an interest in some of the companies, so how can you know what their address is?
>
> [DEFENDANTS' COUNSEL]: Objection, argumentative. He didn't say that he didn't know. He said – he states –
>
> Q: I don't want speaking objections.
>
> [DEFENDANTS' COUNSEL]: I'm just saying –
>
> Q: I don't want a speaking objection.
>
> [DEFENDANTS' COUNSEL]: But you need to quit mischaracterizing his testimony,

                or we're going to leave, and I mean it.

Q:       If you guys leave, that's up to you.

[DEFENDANTS' COUNSEL]:      No, but, I mean, there are rules against what you're doing, so quit mischaracterizes [sic] his testimony.

DE 61-2, 42:4-43:4.

Considering these excerpts and the full deposition transcripts, the Court finds that allowing the discovery period to continue, as discussed above, appropriately addresses the discovery issues before the Court. To impose monetary sanctions—or worse—is not warranted. While Defendant Brinton did refuse to answer several questions relating to SPMC, even though many of them implicated his individual knowledge, he mostly cooperated in testifying about the facts directly related to the lease dispute underlying this case. *See* DE 61-2, 107-157.

So Defendant Brinton and his attorney's conduct did not "impede[], delay[], or frustrate[] the fair examination" of Defendant Brinton. Fed. R. Civ. P. 30(d)(2). Plaintiffs did not re-notice a 30(b)(6) deposition, and if they had, that would have cleared up any confusion about whether Defendant Brinton was being deposed as a representative witness. As a result, the Court will not order Defendants to pay Plaintiffs' expenses when Plaintiffs could have avoided those expenses in the first place.

Defendants' counsel's discovery conduct is certainly concerning. *See* Fed. R. Civ. P. 30(d)(3), Advisory Committee Notes ("In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."). She offered no justification for why they turned over supplemental disclosures so late in the discovery period. But, again, to avoid any inequitable effects from this conduct, the Court extends the discovery deadline, allowing Plaintiffs to depose a 30(b)(6) witness for SPMC and to conduct discovery on Defendants'

supplemental disclosures, along with any other discovery permitted by the pretrial discovery order. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) ("District courts have broad discretion in supervising discovery, including deciding whether and how to sanction . . . misconduct.").

The Court **CAUTIONS** both parties that future failure to comply with Federal Rule of Civil Procedure 30, including the requirement that objections be "stated concisely in a nonargumentative and nonsuggestive manner" and that a "person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)" may result in sanctions. Fed. R. Civ. P. 30(c)(2) (emphasis added); *see also* Fed. R. Civ. P. 30(d)(2).

## VI. Conclusion

Consistent with the discussion above, the Court hereby **DENIES** the Motion to Quash Time-Barred Subpoenas and for a Protective Order [DE 59] **with leave to refile** a motion for a protective order after all objections to the subpoenas and motions to quash the subpoenas have been resolved. The Court **ORDERS** Plaintiffs to serve a copy of this Order on the supoenaed non-parties by no later than **January 13, 2017**. The Court **ORDERS** Plaintiffs to file a notice in this Court if any objection or motion to quash relating to the subpoenas is filed in another district.

The Court also **GRANTS in part and DENIES in part** the Motion for Sanctions and to Re-Open Discovery for a Limited Purpose [DE 61]. The Court **ORDERS** that the discovery deadline is extended through **March 31, 2017**.

SO ORDERED this 5th day of January, 2016.

s/ John E. Martin<br>MAGISTRATE JUDGE JOHN E. MARTIN<br>UNITED STATES DISTRICT COURT

cc: All counsel of record