# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

|  |  |
|---|---|
| ANTHONY E. ELLO and EVELYN ELLO, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) NO. 2:14-CV-00299 ) |
| GARY R. BRINTON and SEVEN PEAKS MARKETING CHICAGO, LLC, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant Gary Brinton's Motion for Summary Judgment and Subject Matter Jurisdiction Challenge, filed on August 14, 2017 (DE #126); Defendant Seven Peaks Marketing Chicago, LLC's Motion for Summary Judgment and Subject Matter Jurisdiction Challenge, filed on August 14, 2017 (DE #128); Defendant Gary Brinton's Motion for Summary Judgment and Subject Matter Jurisdiction Challenge, filed on August 17, 2017 (DE #131); Plaintiff's [*sic*] Motion for Leave to File Response to Defendants' Motions for Summary Judgment *Instanter*, filed on September 26, 2017 (DE #133). For the reasons set forth below, Defendant Gary Brinton's motions for summary judgment (DE #126 and DE #131) are **GRANTED**; Defendant Seven Peaks Marketing Chicago,

LLC's motion for summary judgment (DE #128) is **GRANTED IN PART AND DENIED IN PART**; Plaintiffs' motion for leave to file a response to Defendants' motions for summary judgment *instanter* (DE #133) is **DENIED**. Counts II and III are **DISMISSED**. Count I remains pending against Seven Peaks Marketing Chicago, LLC.

<u>BACKGROUND</u>

In 2013, Anthony and Evelyn Ello (together, "Plaintiffs") entered into a Lease Agreement with defendant Seven Peaks Marketing Chicago, LLC, ("SPMC"), pursuant to which Plaintiffs leased their bowling alley to SPMC for thirteen years. SPMC vacated the property after eleven months. Plaintiffs filed this lawsuit asserting that (1) SPMC breached the Lease Agreement, (2) defendant Gary Brinton ("Brinton") is liable for SPMC's alleged misconduct under an alter ego theory of liability, and (3) Brinton and SPMC (together, "Defendants") fraudulently induced Plaintiffs to enter into the Lease Agreement. During discovery, Defendants served Plaintiffs with requests for admission. Plaintiffs failed to answer the requests for admission in a timely manner.

After the close of discovery, Brinton filed two motions for summary judgment and subject matter jurisdiction challenge (DE #126 and #131), which the Court will treat as one. SPMC also filed a motion for summary judgment and subject matter jurisdiction challenge (DE #128). The motions for summary judgment argue that (1) Plaintiffs' failure to answer the request for admission and

failure to make damages disclosures in their initial disclosures preclude them from offering evidence of damages, (2) without a prospect of a redressable injury, this Court lacks subject matter jurisdiction, and (3) they are entitled to summary judgment on all claims.

Plaintiffs failed to file a response to any of the motions for summary judgment in a timely manner. On September 26, 2017, Plaintiffs filed a motion for leave to file a response to the motions for summary judgment *instanter*. (DE #133.) On the same day, they filed a combined response to the motions for summary judgment that included a motion to withdraw admissions pursuant to Federal Rule of Civil Procedure 36(b). (DE #135.) Plaintiffs' motion for leave to file a response *instanter* and motion to withdraw admissions were fully briefed. Defendants reserved the right to file reply briefs if the Court granted Plaintiffs' motions.

DISCUSSION

Motion for Leave to File Response to Summary Judgment Motions
*Instanter*

Plaintiffs move for leave to file a late response to the defendants' motions for summary judgment *instanter*. Federal Rules of Civil Procedure Rule 6(b)(1) provides that a court "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable

neglect." Fed. R. Civ. P. 6(b)(1)(B); *see Keeton v. Morningstar, Inc.,* 667 F.3d 877, 883 (7th Cir. 2012) (Rule 6(b) "gives courts discretion (with certain exceptions not applicable here) to grant extensions of time when deadlines are missed because of excusable neglect."). The determination whether a party's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993); *see Raymond v. Ameritech Corp.,* 442 F.3d 600, 606 (7th Cir. 2006) ("*Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). Relevant circumstances include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395. "Most important is the reason for the delay. To establish excusable neglect, the moving party must demonstrate genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline, in addition to whatever lack of prejudice and absence of delay he can show." *Satkar Hospitality, Inc. v. Fox Television Holdings,* 767 F.3d 701, 707 (7th Cir. 2014). "[A] lawyer's errors are imputed to the client

for the purpose of [excusable neglect]." *Moje v. Fed. Hockey League, LLC,* 792 F.3d 756, 758 (7th Cir. 2015).

Here, Plaintiffs admit that they missed the deadline for filing a response brief in opposition to the motions for summary judgment by fifteen days. The sole reason offered by Plaintiffs is that their counsel had commitments in other cases. (DE #133 at 1-2; DE #144 at 4 (noting that counsel's supporting affidavits list of two cases on which they were working "as exemplars, not the exclusive tasks that consumed counsel's time"). The Court prefers to resolve cases on their merits, but in this case Plaintiffs' counsel proffers nothing upon which to find excusable neglect. "[I]t is widely accepted that neglect due to a busy schedule is not excusable." *Keeton,* 667 F.3d at 883 (citation omitted); *see Raymond*, 442 F.3d 600 (affirming district court's refusal to consider a late-filed response to a summary judgment motion despite the plaintiff's counsel's claimed busyness); *Dean v. Chicago Transit Auth.,* 118 F. Appx. 993, 996 (7th Cir. 2005) ("An attorney's busy schedule . . . does not rise to the level of excusable neglect."); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) ("[A]ttorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant.").

Plaintiffs note that they have not requested many extensions in this matter, but fail to offer any reason why they could not

have requested an extension before the deadline had expired. Plaintiffs' neglect is not excusable because they "could and should have moved for an extension" if they wished to preserve their right to file responses to Defendants' summary judgment motions. *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *see Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) ("Neglect is generally not excusable when a party should have acted before the deadline."). Moreover, Plaintiffs' delay in filing their summary judgment response brief weighs against finding excusable neglect. *Postle v. Bath & Body Works, LLC*, No. 13 C 50374, 2015 WL 521365, at *4 (N.D. Ill. Feb. 9, 2015) ("The length of the delay weighs against granting the [m]otion" for leave to file *instanter* documents in opposition to summary judgment motion.). Plaintiffs inexplicably waited over two weeks to seek permission for the late filing, thus undermining any claim of good-faith mistake. *See Peters v. Wal-Mart Stores E., LP,* 512 Fed. Appx. 622, 628 (7th Cir. 2013) (holding that district court did not abuse discretion in striking summary judgment response brief where counsel waited nearly three weeks to seek permission for the late filing); *Postle*, 2015 WL 521365, at *4 (filing two weeks late was inexcusable); *Dean,* 118 Fed. Appx. 993 (affirming denial of plaintiff's motion to file a response to a summary judgment motion *instanter* filed nearly two weeks after the deadline). "District courts possess great authority to manage their caseload and have

the right to expect that deadlines will be honored." *Dean*, 118 F.

Appx. at 996 (citation and internal quotation marks omitted); *see*

*Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996)

(district courts "are entitled—indeed they must—enforce deadlines"

for the filing of motions and other papers).

Plaintiffs' counsel have failed to meet their burden of

showing that excusable neglect prevented them from timely filing

their response to the motions for summary judgment. Their alleged

busyness fails to meet the Seventh Circuit's excusable neglect

standard. Accordingly, the Court **DENIES** Plaintiffs' motion for

leave to file a late response to the defendants' motions for

summary judgment *instanter*.[1]

Motions for Summary Judgment

Summary judgment must be granted when "there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

dispute of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

---

[1] Plaintiffs buried a motion to withdraw their admissions in their response brief in opposition to Defendants' motions for summary judgment. (*See* DE #135 at 8-11.) In doing so, Plaintiffs failed to comply with Local Rule 7-1(a), which requires that motions be filed separately. N.D. Ind. L.R. 7-1(a); *see Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) ("[D]istrict courts may require parties to strictly adhere to their rules."). Because the Court has denied Plaintiffs' motion for leave to file their response brief *instanter*, Plaintiffs' response brief is not before the Court, and thus, the Court will not consider the motion to withdraw the admissions contained therein.

2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely on allegations in her own pleading but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the nonmoving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Local Rule 56-1(a) requires a summary judgment movant to file a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). The party opposing the motion must respond within

twenty-eight days with a "Statement of Genuine Disputes" that sets forth the "material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). "[A] failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). When an opposing party fails to respond to a summary judgment motion, Federal Rule of Civil Procedure 56(e) permits judgment for the moving party only if the movant is entitled to it. Fed. R. Civ. P. 56(e)(3). In other words, summary judgment may only be granted "if appropriate—that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (citation omitted)).

Defendants filed a Combined Statement of Material Facts in accordance with Local Rule 56-1(a). Plaintiffs failed to comply with Local Rule 56-1(b) by failing to file their response to Defendants' motions for summary judgment in a timely manner, and the Court has denied Plaintiffs' motion for leave to file their untimely response. Thus, the facts as claimed and properly supported by Defendants in their Combined Statement of Material Facts are deemed admitted without controversy. This Court has reviewed the following facts and finds that they are adequately

supported with appropriate citations to admissible evidence in the record.

Facts

Plaintiffs Anthony Ello ("Anthony") and Evelyn Ello ("Evelyn") are married and reside in Chesterton, Indiana. (Defs. Ex. A at 25, 29.) Plaintiffs had an interest in a bowling alley and lounge located in Chesterton, Indiana ("Bowling Alley"). (DE #24.) In July 2013, Plaintiffs intended to close the Bowling Alley due to lack of community support. (Defs. Ex. F.) Defendant SPMC is a Utah limited liability company with its principal place of business in Utah, and is registered to do business in Indiana. (Defs. Exs. X, Y.) SPMC specialized in family entertainment. SPMC has articles of incorporation and an operating agreement. (Defs. Exs. X, AA.) It is registered to do business in Utah, Delaware and Indiana, files its own annual tax return, and maintains a separate bank account. (Defs. Exs. Y, BB, CC.)

When a local realtor contacted SPMC about the Bowling Alley, SPMC expressed an interest in leasing or buying the Bowling Alley, and initiated contact with Plaintiffs. (Defs. Ex. G.) On or before July 12, 2013, SPMC and Plaintiffs entered the Lease Agreement ("Lease" or "Lease Agreement"). (DE #24-1.) The Lease had a thirteen year term and included the following obligations: (1) SPMC would make monthly base rent payments to Horizon Bank in the amount of Plaintiffs' mortgage payment (approximately $4,300

per month) ("Rent"); (2) SPMC would make monthly premium rent payments to Plaintiffs to compensate them for their $60,000 of equity in the Bowling Alley ("Equity Payments"); and (3) SPMC would pay utilities and taxes, and would obtain insurance on the Bowling Alley. (*Id.* at 1.) Article V of the Lease addresses the Security Deposit Bond ("Bond"):

> Concurrently with Tenant's execution of this Lease or a soon as practical thereafter, Tenant shall maintain a deposit bond with Landlord in the sum of $75,000.00 in the form of a bond issued by a bonding/insurance company (hereinafter the "Security Deposit Bond"). The Security Deposit Bond shall be for the benefit of the Landlord to secure the faithful performance by Tenant of all of the terms, covenants, and conditions of this Lease to be kept and performed by Tenant during the term of this Lease. If Tenant defaults with respect to the payment provisions of this Lease, Landlord may, but shall not be obligated to make demand on the Security Deposit Bond with the bonding company for the payment of any amount which Landlord may spend by reason of Tenant's default or to compensate Landlord for any other loss or damage which Landlord may suffer by reason of Tenant's default. . . . [I]f Tenant shall exercise its option to purchase the Premises, the Security Deposit Bond or any balance thereof shall be returned to Tenant. . . .

(*Id.* at 2.) The Lease also includes a remedy provision in the event of default. The parties executed an addendum to the Lease, which gave SPMC the option to purchase the Bowling Alley. (*Id.* at 10.)

After entering the Lease, SPMC made efforts to obtain the Bond. On July 17, 2013, Brinton informed Plaintiffs that he had asked his insurance agent with Multi-Serve Insurance to contact Plaintiffs regarding the Bond. (Defs. Ex. O at 5-6.) On July 26,

2013, Brinton emailed a bond application to Dean Insurance, copying Anthony and Horizon Bank, stating that Wendy Dean said the Bond would be placed in "7 days or so." (*Id.* at 2.) Anthony and Brinton also discussed bond alternatives after the Lease was entered, including using it for improvements to the building. (Defs. Ex. A at 242-43.)

Brinton began negotiating with Horizon Bank for the purchase of the Bowling Alley. (Defs. Ex. I at 71-72.) Anthony was aware of these negotiations. (Defs. Ex. A at 237-39.) On September 10, 2013, Brinton emailed Anthony notifying him that "[m]y intentions are to purchase the bowling alley from you through financing from Kent Mishler at Horizon Bank, thus alleviating the need for the security bond because we will be owners. Not tenants." (Defs. Ex. P.) Brinton's negotiations with Horizon Bank continued off and on until June 2014. (Defs. Ex. I at 71-72; DE #131-8 at 29.) Anthony admitted that Plaintiffs weren't "aggressively pursuing" the Bond because they were busy people, and because Brinton was pursuing financing to purchase the Bowling Alley. (Defs. Ex. A at 255.) Anthony did not know whether he communicated with SPMC between January 2014 and the end of May 2014, and did not think his attorney did so. (*Id.* at 251-52.)

SPMC paid rent and the Bowling Alley's utilities until June 2014. (*See* Defs. Ex. L at 226; Defs. Ex. B.) SPMC had a premises insurance policy in place on the Bowling Alley beginning on

September 12, 2013, and paid the premiums through June 2014. (Defs. Exs. L at 226; Defs. Ex. N.)  SPMC also made capital improvements to the Bowling Alley.  (Defs. Ex. K at 2-3.) Plaintiffs did not provide SPMC with a tax notice prior to June 2014.  (Defs. Ex. J at 138.)

On June 9, 2014, SPMC received a letter from Plaintiffs' counsel stating that to avoid being in default under the Lease, SPMC must submit the completed form of bond within five days. (Defs. Ex. Q.)  At that time, SPMC and Horizon Bank were still discussing financing for SPMC to purchase the Bowling Alley. (*See* DE #131-8 at 29.)  That same day, Bowling Alley manager Ryan Hartman ("Hartman") – who was Plaintiffs' tenant and former employee – told SPMC general manager Matt Phair ("Phair") that Plaintiffs sent SPMC a demand letter and intended to change the locks on the Bowling Alley doors if SPMC did not comply with the Lease. (Defs. Ex. K at 2.)  Phair informed SPMC of this. (*Id*. at 3.)  SPMC considered this information to be reliable because of Hartman's close relationship to Plaintiffs and his knowledge of the demand letter before SPMC received it.  (Defs. Ex. L at 198-201.)  That day, SPMC removed certain items from the Bowling Alley. (Defs. Exs. K, R.)  Phair oversaw the removal, which he maintains was done in a workmanlike manner, taking care to leave anything belonging to Plaintiffs and not to damage any property or fixture. (Defs. Exs. K, R, T.)  SPMC left food, frozen items, and certain

assets in the Bowling Alley.  (Defs. Exs. K, T.)  The following day, Plaintiffs locked SPMC out of the Bowling Alley by changing the locks.  (Defs. Ex. K.)  Evelyn was there and told SPMC employees to leave the property.  (*Id.*)

On June 11, 2014, SPMC's counsel emailed Plaintiffs' counsel a letter responding to their demand letter, noting that SPMC had vacated the Bowling Alley, and its reluctance to walk away from the Lease.  (Defs. Ex. U.)  The letter indicated that SPMC was cancelling the insurance policies related to the Bowling Alley and directing that the utilities be shut off.  (*Id.*)  The letter also suggested that the business opportunity could be salvaged.  (*Id.*)  Plaintiffs did not respond to this letter, and filed the instant lawsuit in August 2014.

On March 1, 2017, Defendants served Plaintiffs with requests for admissions.  (Defs. Ex. E.)  Plaintiffs failed to answer within the thirty days allowed by Rule 36(a)(3) of the Federal Rules of Civil Procedure.  Discovery ended in this case on April 28, 2017.  (DE #116.)

Analysis

Initial Disclosures Issue

Defendants maintain that Plaintiffs violated Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure by serving Initial Disclosures containing no damages total, damages calculation, and no damages documentary evidence.  They assert

-14-

that such violation leaves Plaintiffs with no admissible damages evidence, which is fatal to all of their claims. Rule 26(a)(1)(A)(iii) requires a party to disclose "a computation of each category of damages claimed by the disclosing party." Rule 26(a) disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) provides that a party is not allowed to use information that it should have, but failed to, disclose under Rule 26(a) or (e), unless such failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs' Initial Disclosures state that Plaintiffs "will testify to their damages, which includes the amount due under the lease agreement, unnecessary professional fees and the ultimate loss of the property and additional payments made to Horizon Bank." (Defs. Ex. C at 2.) The Initial Disclosures also provide that witness Terry Hiestand will testify to "damages resulting from the breach" and witnesses "Kent Mishler/Horizon Bank employees" will testify to "damages resulting from the default." (*Id*. at 2-3.) The Initial Disclosures attached the Lease Agreement, which is governed by Utah law. (*Id*.) Under Utah law, damages for breach of contract "may include general (or direct) and consequential (or

special) damages." *Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.,*
379 P.3d 1200, 1202 (Utah 2016).

> General damages for a breach of contract or lease are
> measured by the market value of the very thing promised,
> at the time of performance. Such general damages are
> said to be implied in law because they are the probable
> and necessary result of the injury. Hence, they are
> damages which everybody knows are likely to result from
> the harm described.

*Id.* at 1206-07 (internal citations, quotation marks and brackets
omitted). Consequential damages "are reasonably within the
contemplation of, or reasonably foreseeable by, the parties at the
time the contract was made." *Id.* at 1202 (citation and internal
quotation marks omitted). "While the standard for determining the
amount of damages is not so exacting as the standard for proving
the fact of damages, there still must be evidence that rises above
speculation and provides a reasonable, even though not necessarily
precise, estimate of damages." *Atkin, Wright & Miles v. Mtn.
States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985).

Defendants cite *Sulaiman v. Biehl & Biehl, Inc.,* No. 15 C
04518, 2016 WL 5720476 (N.D. Ill. Sept. 30, 2016), to argue that
the Court should dismiss Plaintiffs' claims based on their Initial
Disclosures. In *Sulaiman*, the plaintiff alleged an Illinois
Consumer Fraud and Deceptive Business Practices Act ("ICFA")
claim, but had not requested actual damages. *Id.* at *8. Plaintiff
later argued that he had actual damages of "his time and energy
spent calling Biehl to dispute the debt." *Id.* The court held

that the plaintiff failed to meet the disclosure requirements of Rule 26(a)(1)(A)(iii) because he failed to identify evidence of actual damages that he suffered as a result of the alleged ICFA violation. *Id*. This Court finds *Sulaiman* to be distinguishable. Unlike *Sulaiman*, here Plaintiffs allege a breach of contract and damages resulting from the breach of contract, and the contract itself provides a method of determining damages for a breach.[2]

While Defendants argue that they have "no idea" of the damages alleged by Plaintiffs, the Lease Agreement shines light on this issue, at least as to Plaintiffs' breach of contract claim.[3] The Lease Agreement provides that the Lease had a thirteen-year term, and that SPMC would pay Rent of approximately $4,300 per month, Equity Payments to compensate Plaintiffs for their $60,000 of equity in the Bowling Alley, utilities, and taxes, among other obligations. The Amended Complaint alleges that SPMC failed to perform terms of the Lease, and abandoned the Bowling Alley after eleven months of the thirteen-year term. (Am. Compl. ¶29-¶30.)

---

[2] Defendants also cite several cases addressing Plaintiffs' attempts to submit damages evidence after the close of discovery. *See, e.g., Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 513 (7th Cir. 2011) (affirming exclusion of declaration submitted months after discovery closed); *Ablan v. Bank of Am. Corp.*, No. 11 CV 4493, 2014 WL 6704293, at *5 (N.D. Ill. Nov. 24, 2014) (adopting report and recommendation barring plaintiffs from relying on or introducing new evidence at summary judgment or trial), *aff'd*, 665 F. Appx. 544 (7th Cir. 2016). Because Plaintiffs' admissions are deemed admitted and discovery is closed, this is not at issue here.

[3] Because the Court grants summary judgment in Defendants' favor on Plaintiffs' other claims for the reasons provided below, it does not address the sufficiency of Plaintiffs' Initial Disclosures as to those claims.

The Lease Agreement addresses default and remedies therefore, including Plaintiffs' entitlement to recover unpaid rent. (DE #24-1 at ¶18.1-¶18.2.) Because the Lease Agreement provides a reasonable, even though not necessarily precise, estimate of damages for SPMC's alleged breach of contract under Utah law, the Court finds that Plaintiffs' Initial Disclosures satisfy Rule 26(e) as to the breach of contract claim.

<u>Standing</u>

The Court will address Defendants' contention that Plaintiffs lack standing to sue before considering the merits of their claims. Standing is an essential component of Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). There are three standing requirements: injury in fact, causation, and redressability. *See id.* at 561. Each element of standing is "an indispensable part of the plaintiff's case . . . [that] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Defendants argue that Plaintiffs lack standing because they fail to establish injury in fact, *i.e.,* damages. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016) (quoting *Lujan,* 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (citation omitted).

Plaintiffs' Amended Complaint asserts claims of breach of contract and fraudulent inducement. Count I alleges that SPMC breached the Lease by abandoning the property and failing to secure the Bond; pay the rent, taxes and assessments; maintain insurance; and maintain the Bowling Alley in good order and condition. (Am. Compl. ¶29-¶30.) Count III alleges that Defendants fraudulently induced Plaintiffs to enter into the Lease by misrepresenting that SPMC: (1) had enough capital to pay for the Bond, insurance, and utilities; (2) would secure the Bond when in fact no bond had been obtained, and Brinton knew that no bond would be obtained when they entered the Lease; and (3) was authorized to conduct business in Indiana when the company was not registered or licensed in Indiana prior to entering the Lease. (*Id.*, ¶50, ¶¶52-53.) To prevail on these claims, Plaintiffs must prove they suffered damages. *See Carmichael v. Higginson,* 402 P.3d 146, 149 n.5 (Utah Ct. App. 2017) (plaintiff must prove damages under breach of contract claim); *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005)(plaintiff must prove

misrepresentation "proximately caused the injury or damage" to prevail on fraud claim).[4]

Defendants cite Plaintiffs' admissions as evidence of their lack of damages. Plaintiffs failed to answer Defendants' requests for admission within the thirty days allowed by Rule 36(a)(3) of the Federal Rules of Civil Procedure. As such, the matters were deemed admitted by operation of the Federal Rules. *See* Fed. R. Civ. P. 36(a)(3). "A matter admitted under [Rule 36] is conclusively established." Fed. R. Civ. P. 36(b). Plaintiffs' admissions conclusively establish that they have no evidence that they incurred damages proximately caused by: (1) nonpayment of Rent and utilities on the Bowling Alley from June 1, 2013, through June 10, 2014 (the date SPMC vacated the property); (2) SPMC's making of Equity Payments to Plaintiffs before SPMC vacated the property; (3) absence of liability insurance on the Bowling Alley before SPMC vacated the property; and (4) the timing of SPMC's registration to do business in Indiana. (Defs. Ex. E at 6-7.) But Plaintiffs' admissions do not negate all of their alleged damages. For example, the admissions do not address the damages

---

[4]Magistrate Judge Springmann determined that Indiana law applies to Plaintiffs' fraud claim, and that Utah law applies to the breach of contract and alter ego claims. (DE #19 at 5.) The Court need not separately consider the alter ego claim in Count II because under Utah law, "[a]lter ego theory is not an independent claim for relief; rather, it is a theory of liability." *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, 284 P.3d 630, 640 n.1 (Utah 2012) (citation omitted).

allegedly caused by SPMC's failure to pay Rent or Equity Payments after it vacated the property on June 10, 2014.

Defendants also argue that Plaintiffs have no standing because their Initial Disclosures' failure to satisfy Rule 26(1)(A)(iii) leaves them with no admissible damages. The Court has found that Plaintiffs' Initial Disclosures, including the Lease Agreement, provide evidence of damages for breach of contract under Utah law. Thus, this argument is unavailing. Considered in the light most favorable to Plaintiffs, the evidence that SPMC did not secure the Bond and vacated the Bowling Alley prior to the expiration of the Lease, coupled with the Lease Agreement's remedy provisions, provide sufficient evidence of damages to satisfy the injury in fact requirement for standing. Therefore, the Court will consider the merits of Plaintiffs' claims.

Count I - Breach of Contract Claim

SPMC moves for summary judgment on Count I of the Amended Complaint. Count I alleges that SPMC breached the Lease by abandoning the Bowling Alley and failing to: secure the Bond; pay rent, taxes and assessments; maintain the insurance coverage; and maintain the Property in good order and condition. (DE #24 at 5 (Am. Compl. ¶¶29-30).) In Utah, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Carmichael,* 402 P.3d at 149 n.5 (citation

omitted).  As noted above, damages for breach of contract under Utah law "may include general (or direct) and consequential (or special) damages." *Trans-W. Petroleum,* 379 P.3d at 1202.  Relying on Plaintiffs' admissions, SPMC argues that their breach of contract claim should be dismissed based on a lack of evidence of damages.[5]  "Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (citations omitted); *see* Fed. R. Civ. P. 56(c)(1)(A).  Plaintiffs' admissions conclusively establish that they have no evidence of damages proximately caused by the absence of liability insurance or nonpayment of Rent, Equity Payments, or utilities from June 1, 2013, through June 10, 2014, when SPMC vacated the Bowling Alley; and that when SPMC vacated the Bowling Alley, the bowling alley computers and scoring system were fully operable.  (Defs. Ex. E at 6-9.)  However, these admissions do not address the damages allegedly caused after SPMC vacated the Bowling Alley.

The evidence demonstrates that on June 9, 2014, Plaintiffs informed SPMC that it must submit the Bond to avoid being in default under the Lease, and that SPMC vacated the Bowling Alley the following day.  While the Amended Complaint alleges SPMC abandoned the Bowling Alley, Defendants assert that Plaintiffs

---

[5] SPMC also argues that summary judgment should be granted on Count I because Plaintiffs' Initial Disclosures fail to satisfy Rule 26(a)(1(A)(iii).  The Court has considered and rejected this argument, and need not address it again here.

locked SPMC out of the Bowling Alley. Considering the evidence before the Court in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to whether SPMC breached the Lease. The Lease Agreement provides for remedies for breach of the Lease's provisions, including Plaintiffs' entitlement to recover unpaid rent. Because there is evidence sufficient to raise a genuine issue of material fact as to Plaintiffs' damages under the Lease Agreement, the Court denies SPMC's motion for summary judgment as to Count I.

### Count III – Fraud Claim

Defendants move for summary judgment on Count III of the Amended Complaint. Count III alleges that Defendants fraudulently induced Plaintiffs to enter into the Lease. "To constitute a valid claim for fraud, the complaining party must prove there was a material misrepresentation of past or existing fact made with knowledge or reckless ignorance of its falsity, and the misrepresentation caused reliance to the detriment of the person relying upon it." *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004) (citation omitted). "To prevail on a fraud claim, a plaintiff claiming both breach of contract and fraud must prove that the breaching party committed the separate and independent tort of fraud and that such fraud resulted in injury distinct from that resulting from the breach of contract."

*Dean v. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010) (citation omitted).

Defendants argue that Plaintiffs' fraud claim is a repackaging of the breach of contract claim, with no alleged injury distinct from the breach of contract. The Court agrees. Indiana "bar[s] fraud claims where the damages arising from the fraud claim are not separate and distinct from the damages resulting from a breach of contract." *Garmin Wurzburg Gmbh v. Auto. Imagineering & Mfg., LLC,* No. 314CV02006PPSCAN, 2016 WL 3072011, at *2 (N.D. Ind. June 1, 2016) (citing *Epperly v. Johnson,* 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000) (finding that the plaintiff's fraud claim failed because the defendant's misrepresentation was merely a breach of the parties' contract; "[t]he misrepresentation did not result in injury distinct from that resulting from the breach, and it thus is not independently actionable as fraud")). There is no evidence before the Court of an injury resulting from Defendants' allegedly fraudulent conduct that is separate and distinct from the alleged injury resulting from the breach of the Lease. (*See also* Am. Compl. ¶57 (alleging in Count III that Plaintiffs were "damaged when [SPMC] abandoned the Property after fulfilling only eleven (11) months of the thirteen (13) year lease.").) Therefore, Defendants' motions for summary judgment on Count III is **GRANTED**.

<u>Count II - Alter Ego Claim</u>

Brinton moves for summary judgment on Count II of the Amended Complaint, which alleges that Brinton should be held liable for SPMC's conduct under an alter ego theory of liability. The Lease Agreement and its addendum provide that the Lease was between Plaintiffs and SPMC as tenant, and are signed by Brinton as managing member of SPMC. (DE #24-1 at 1, 8-10.) Under Utah law, "[t]he alter ego doctrine is an exception to the general rule that limits stockholders' liability for obligations of the corporation." *Lowry,* 284 P.3d at 635 (citation omitted). "If a party can prove its alter ego theory, then that party may 'pierce the corporate veil' and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity." *Id*. (citation omitted). A party may pierce the corporate veil when (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co*., 596 P.2d 1028, 1030 (Utah 1979) (citations omitted). Utah courts consider the following factors in determining whether the formalities element of the *Norman* test is satisfied:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Lowry*, 284 P.3d at 636 (citing *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)). "Where a party moves for summary judgment in an alter ego case, the court must evaluate the entire relationship between the corporation and its officers and ask whether there are disputed facts relevant to *Norman's* two-part test for piercing the corporate veil." *Id.* at 638. "[E]vidence of even one of the *Colman* factors may be sufficient to suggest both elements of a party's alter ego theory." *Id.*

Defendants argue that the alter ego claim should be dismissed because Plaintiffs have no admissible evidence supporting this theory of liability. Defendants cite Plaintiffs' admissions that they have no evidence that, during the period between June 1, 2013, and June 10, 2014: SPMC was undercapitalized; SPMC's cash and assets were not kept separate from other entities; SPMC did not maintain accurate financial records; Brinton used SPMC assets for the benefit of other entities; SPMC was a sham used by Brinton to protects his own assets; or SPMC had no real business organization. (Defs. Ex. E at 7-8.) In addition, Defendants proffer evidence that Brinton's personal funds are kept separate from any entity's

funds, including SPMC's funds, as well as documentation of SPMC's business registrations, license, operating agreement, tax returns, separate bank account, and articles of organization. The record before the Court does not proffer any evidence of the undercapitalization of SPMC, siphoning of funds by Brinton, nonfunctioning of other members, an absence of company records, or failure to observe company formalities. Because there is no genuine issue of material fact as to any of the *Coleman* factors, Brinton's motion for summary judgment on Count II is **GRANTED.**

CONCLUSION

For the reasons set forth above, Defendant Gary Brinton's motions for summary judgment (DE #126 and DE #131) are **GRANTED**; Defendant Seven Peaks Marketing Chicago, LLC's motion for summary judgment (DE #128) is **GRANTED IN PART AND DENIED IN PART**; Plaintiffs' motion for leave to file a response to Defendants' motions for summary judgment *instanter* (DE #133) is **DENIED.** Counts II and III are **DISMISSED.** Count I remains pending against Seven Peaks Marketing Chicago, LLC.


**DATED:  March 28, 2018**        **/s/ RUDY LOZANO, Judge**
                                   **United States District Court**