UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ANTHONY E. ELLO and EVELYN ELLO,

Plaintiffs,

v.                                              CAUSE NO.: 2:14-CV-299-TLS-JPK

SEVEN PEAKS MARKETING CHICAGO,
LLC,

Defendant.

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for an Order Establishing Facts at Trial [ECF No. 178] filed on May 31, 2019. The Plaintiffs filed their response [ECF No. ECF No. 184] on June 14, 2019. On July 5, 2019, the Defendant filed a reply [ECF No. 201] in further support of their Motion. For the reasons stated below, the Court GRANTS the Defendant's Motion for an Order Establishing Facts at Trial [ECF No. 178].

## BACKGROUND

In 2013, the Plaintiffs entered into a lease agreement with Defendant Seven Peaks Marketing Chicago, LLC ("SPMC"), pursuant to which the Plaintiffs leased their bowling alley to SPMC for thirteen years. SMPC vacated the property after eleven months. Plaintiffs filed this lawsuit asserting that (1) SPMC breached the lease agreement (Count 1); (2) Defendant Gary Brinton is liable for SPMC's alleged misconduct under an alter ego theory of liability (Count 2); and (3) Gary Brinton and SPMC fraudulently induced the Plaintiffs to enter into the lease agreement (Count 3).

During the discovery phase of this case, the Defendants, served the Plaintiffs with requests for admission. The Plaintiffs failed to timely answers the requests for admission. After the close of discovery, Defendant Gary Brinton filed a Motion for Summary Judgment and Subject Matter Jurisdiction Challenge [ECF No. 126] on August 14, 2017. On that same day, Defendant SPMC filed a Motion for Summary Judgment and Subject Matter Jurisdiction [ECF No. 128]. Subsequently, on August 17, 2017, Defendants Gary Brinton and SPMC filed an Amended Motion for Summary Judgment and Subject Matter Jurisdiction Challenge [ECF No. 131] with a Combined Statement of Material Facts [ECF No. 131–1] in accordance with Local Rule 56–1(a). The Plaintiffs eventually filed a motion for leave to file a late response to the Defendants' motions for summary judgment instanter [ECF No. 133] on September 26, 2017. On that same day, the Plaintiffs filed their response [ECF No. 135] to the motions for summary judgment.

In an Order and Opinion [ECF No. 147] dated March 28, 2018, the late Honorable Rudy Lozano ruled on the parties' various motions. First, Judge Lozano denied the Plaintiffs' motion [ECF No. 133] for leave to file a late response to the Defendants' motions for summary judgment. Next, Judge Lozano granted Defendant Gary Brinton's motions for summary judgment [ECF Nos. 126 and 131], thereby terminating Defendant Gary Brinton as a party to the case. Judge Lozano specifically held: "[T]he facts as claimed and properly supported by Defendants in their Combined Statement of Material Facts are deemed admitted without controversy. This Court has reviewed the following facts and finds that they are adequately supported with appropriate citations to admissible evidence in the record." *See* Op. & Order, at 9–10.

With respect to SPMC's motion for summary judgment [ECF No. 128], Judge Lozano granted summary judgment on Counts 2 and 3 but denied summary judgment as to Count 1. *Id.* at 27. Finally, Judge Lozano denied the Plaintiffs' motion for summary judgment instanter. *Id.* Therefore, the only pending count remaining in the case is Count 1 for breach of contract. *See id.*

The case was reassigned to this Court on August 20, 2018 [ECF No. 153]. On February 12, 2019, the Court scheduled the case for trial to commence on September 17, 2019, and set a final telephonic pretrial conference ("FTPC") date of August 19, 2019 [ECF No. 165]. Prior to the FTPC, Defendant SPMC, the only remaining defendant in the case, filed the instant Motion. The Motion was fully briefed prior to the FTPC.

**ANALYSIS**

During the FTPC, the Court, on the record, granted the Defendant's Motion that the findings Judge Lozano deemed admitted in his summary judgment order were "established in the case" pursuant to Federal Rule of Civil Procedure 56(g). The Court informed the parties that the Court would issue a written order granting the Defendant's Motion. For the reasons stated below, the Court grants the Defendant's motion.

Federal Rule of Civil Procedure 56(g) provides: "If the court does not grant all the relief requested by the [summary judgment] motion, it may enter an order stating any material fact— including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."  The Committee Notes to Rule 56 adds that a court should "take care" to ensure that the use of Rule 56(g) "does not interfere" with a nonmovant's ability to accept a fact for "purposes of the [summary judgment] motion only." Fed. R. Civ. P. 56(g) advisory committee's note.

Defendant SPMC filed a Rule 56(g) order requesting that the Court establish for trial the unrefuted facts set out in its Combined Statement of Material Facts. The Defendant asserts that Judge Lozano "held each fact on which [he] relied in [his] Opinion and Order ruling on summary judgment was supported by determinative, competent evidence." Def.'s Mem. in Supp. of Rule 56(g) Motion at 1, ECF No. 179. Accordingly, the Defendant requests that the following facts, verbatim from summary judgment opinion, should be "deemed admitted without controversy" pursuant to Rule 56(g):

    1. Plaintiffs Anthony Ello ("Anthony") and Evelyn Ello ("Evelyn") are married and reside in Chesterton, Indiana.

    2. Plaintiffs had an interest in a bowling alley and lounge located in Chesterton, Indiana ("Bowling Alley").

    3. In July 2013, Plaintiffs intended to close the Bowling Alley due to lack of community support.

    4. Defendant SPMC is a Utah limited liability company with its principal place of business in Utah, and is registered to do business in Indiana.

    5. SPMC specialized in family entertainment.

    6. SPMC has articles of incorporation and an operating agreement. It is registered to do business in Utah, Delaware and Indiana, files its own annual tax return, and maintains a separate bank account.

    7. When a local realtor contacted SPMC about the Bowling Alley, SPMC expressed an interest in leasing or buying the Bowling Alley, and initiated contact with Plaintiffs.

    8. On or before July 12, 2013, SPMC and Plaintiffs entered the Lease Agreement ("Lease" or "Lease Agreement").

9. The Lease had a thirteen year term and included the following obligations:

    (a) SPMC would make monthly base rent payments to Horizon Bank in the amount of Plaintiffs' mortgage payment (approximately $4,300 per month) ("Rent");

    (b) SPMC would make monthly premium rent payments to Plaintiffs to compensate them for their $60,000 of equity in the Bowling Alley ("Equity Payments"); and (3) SPMC would pay utilities and taxes, and would obtain insurance on the Bowling Alley.

10. Article V of the Lease addresses the Security Deposit Bond ("Bond"):

> Concurrently with Tenant's execution of this Lease or a soon as practical thereafter, Tenant shall maintain a deposit bond with Landlord in the sum of $75,000.00 in the form of a bond issued by a bonding/insurance company (hereinafter the "Security Deposit Bond'). The Security Deposit Bond shall be for the benefit of the Landlord to secure the faithful performance by Tenant of all of the terms, covenants, and conditions of this Lease to be kept and performed by Tenant during the term of this Lease. If Tenant defaults with respect to the payment provisions of this Lease, Landlord may, but shall not be obligated to make demand on the Security Deposit Bond with the bonding company for the payment of any amount which Landlord may spend by reason of Tenant's default or to compensate Landlord for any other loss or damage which Landlord may suffer by reason of Tenant's default. . . . [I]f Tenant shall exercise its option to purchase the Premises, the Security Deposit Bond or any balance thereof shall be returned to Tenant. . . .

11. The Lease also includes a remedy provision in the event of default. The parties executed an addendum to the Lease, which gave SPMC the option to purchase the Bowling Alley.

12. After entering the Lease, SPMC made efforts to obtain the Bond. On July 17, 2013, Brinton informed Plaintiffs that he had asked his insurance agent with Multi-Serve Insurance to contact Plaintiffs regarding the Bond.

13. On July 26, 2013, Brinton emailed a bond application to Dean Insurance, copying Anthony and Horizon Bank, stating that Wendy Dean said the Bond would be placed in "7 days or so."

14. Anthony and Brinton also discussed bond alternatives after the Lease was entered, including using it for improvements to the building.

15. Brinton began negotiating with Horizon Bank for the purchase of the Bowling Alley.

16. Anthony was aware of these negotiations.

17. On September 10, 2013, Brinton emailed Anthony notifying him that "[m]y intentions are to purchase the bowling alley from you through financing from Kent Mishler at Horizon Bank, thus alleviating the need for the security bond because we will be owners. Not tenants."

18. Brinton's negotiations with Horizon Bank continued off and on until June 2014.

19. Anthony admitted that Plaintiffs were not "aggressively pursuing" the Bond because they were busy people, and because Brinton was pursuing financing to purchase the Bowling Alley.

20. Anthony did not know whether he communicated with SPMC between January 2014 and the end of May 2014, and did not think his attorney did so.

21. SPMC paid rent and the Bowling Alley's utilities until June 2014.

22. SPMC had a premises insurance policy in place on the Bowling Alley beginning on September 12, 2013, and paid the premiums through June 2014.

23. SPMC also made capital improvements to the Bowling Alley.

24. Plaintiffs did not provide SPMC with a tax notice prior to June 2014.

25. On June 9, 2014, SPMC received a letter from Plaintiffs' counsel stating that to avoid being in default under the Lease, SPMC must submit the completed form of bond within five days.

26. At that time, SPMC and Horizon Bank were still discussing financing for SPMC to purchase the Bowling Alley.

27. That same day, Bowling Alley manager Ryan Hartman ("Hartman")—who was Plaintiffs' tenant and former employee—told SPMC general manager Matt Phair ("Phair") that Plaintiffs sent SPMC a demand letter and intended to change the locks on the Bowling Alley doors if SPMC did not comply with the Lease.

28. Phair informed SPMC of this.

29. SPMC considered this information to be reliable because of Hartman's close relationship to Plaintiffs and his knowledge of the demand letter before SPMC received it.

30. That day, SPMC removed certain items from the Bowling Alley.

31. Phair oversaw the removal, which he maintains was done in a workmanlike manner, taking care to leave anything belonging to Plaintiffs and not to damage any property or fixture.

32. SPMC left food, frozen items, and certain assets in the Bowling Alley.

33. The following day, Plaintiffs locked SPMC out of the Bowling Alley by changing the locks.

34. Evelyn was there and told SPMC employees to leave the property.

35. On June 11, 2014, SPMC's counsel emailed Plaintiffs' counsel a letter responding to their demand letter, noting that SPMC had vacated the Bowling Alley, and its reluctance to walk away from the Lease.

36. The letter indicated that SPMC was cancelling the insurance policies related to the Bowling Alley and directing that the utilities be shut off.

37. The letter also suggested that the business opportunity could be salvaged.

38. Plaintiffs did not respond to this letter, and filed the instant lawsuit in August 2014. *See* Def.'s Mem. in Supp. of 56(g) Motion.

The Plaintiffs indicate that they do not object to the Court finding the above facts numbered 1–5, 7–13, 25, and 35 as undisputed, albeit not necessarily admissible. The Plaintiffs do object to the Court finding the remaining facts undisputed in the case pursuant to Rule 56(g). The Plaintiffs appear to offer two arguments for why this Court should deny the Defendant's Rule 56(g) Motion. The Court will address each argument in turn.

First, the Plaintiffs assert that the Rule 56(g) motion should not be granted because the motion was made after the summary judgement motions were decided; whereas, Rule 56 contemplates relief contemporaneous with the summary judgment decision. This argument is easily resolved in favor of the Defendant as the Seventh Circuit in *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, found that a district court is not required to issue an order granting a Rule 56(g) motion contemporaneously with its summary judgment decision. 919 F.3d 405, 416 (7th Cir. 2019). Therefore, the Plaintiffs' argument that the Rule 56(g) Motion is improper because it was not decided at the same time as the summary judgment motions is unconvincing.

Second, the Plaintiffs appear to contend that the Rule 56(g) Motion is not well taken because Judge Lozano admitted the Defendant's Statement of Material Facts as a result of the

Plaintiffs' failure to timely file a response raising genuine issues of material facts. Again, the Seventh Circuit's affirmance in *Kreg Therapeutics*—the facts of which closely mirror those in the instant case—weighs against the Plaintiffs. In that case, the parties filed cross motions for summary judgment accompanied with statements of facts pursuant to Northern District of Illinois Local Rule 56.1(a). *Kreg Therapeutics*, 919 F.3d at 411. The defendant, however, failed to file record evidence in support of its statement of facts as required by Northern District of Illinois Local Rule 56.1(b). *Id.* Moreover, the defendant did not file a response to the plaintiff's motion for summary judgment in violation of the same local rule. *Id.* The district court, in ruling on the plaintiff's motion for summary judgment, acknowledged the defendant's noncompliance with the local rule requiring record evidence in support of a statement of facts, and admitted the plaintiff's statement of facts as undisputed in its summary judgment decision. *Id.* As the case approached trial, the plaintiff subsequently filed a Rule 56(g) motion requesting that the district court find that the facts admitted in its summary judgement opinion be treated as the facts established in the case, which the district court granted. *Id.* After the trial, the defendant appealed, in part, the district court's order granting the plaintiff's Rule 56(g) motion. *See id.* at 412–13. The Seventh Circuit affirmed the district court's granting of the appellee-plaintiff's Rule 56(g) motion finding that the district court did not abuse its discretion. *Id.* at 413.

Applying *Kreg Therapeutics* to this case suggests that a court enforcing a local rule such that it prevents a party from contesting the opposing party's statement of material facts does not bar a court from granting the opposing party's subsequent Rule 56(g) motion establishing those same facts for the case. Like the defendant in *Kreg Therapeutics*, who failed to comply with a local rule requiring the party submit issues of genuine facts with record support, the Plaintiffs in this case also failed to comply with a local rule. The specific rule at issue here is Northern

9

District of Indiana Local Rule 56-1(b), which requires an opposing party to file a response to a summary judgment motion and any materials raising a genuine issue of fact *within twenty-eight (28) days* of the movant's filing for summary judgment. The Plaintiffs failed to comply with Local Rule 56–1(b) by failing to *timely* file their response to the Defendants' motions for summary judgment and statement of material facts.[1] Hence, the Plaintiff's eventual but untimely response does not prevent this Court from granting the Defendant's Rule 56(g) motion.

This Court has also "take[n] care" to ensure that its use of Rule 56(g) "does not interfere" with the Plaintiffs' ability to accept a fact for "purposes of the [summary judgment] motion only" as advised by the Committee Notes to Rule 56(g). The Committee Notes to Rule 56(g) advises that a court should not find a fact established in a case against a party pursuant to Rule 56(g) when that party accepted that fact for the limited purpose of summary judgment. For this principle to apply in the Plaintiffs' favor, the Plaintiffs would have had to indicate they accepted some fact as undisputed for the limited purpose of the summary judgment motions. *See Kreg Therapeutics*, 919 F.3d at 415–16 (suggesting that for the principle stated in the Committee Notes to apply, the defendant would have had to indicate to the district court that it was accepting a fact about the plaintiff's performance under the contract only for the purposes of the cross motions for summary judgment). The Plaintiffs made no such indication at the summary judgment stage, and therefore the Court has not interfered in the Plaintiffs' ability to accept a fact for the limited purpose of summary judgment.

---

[1] *Cf. Kreg Therapeutics*, 919 F.3d at 415–16 (stating in the context of the Northern District of Illinois' analogous local rule on summary judgment filings: "The rule aims to make summary-judgment decisionmaking manageable for courts . . . . That is why we allow strict enforcement of the local rule, recognizing that it is not the duty of the district court to scour the record in search of material factual disputes." (internal quotations and citations omitted)).

**CONCLUSION**

For the reasons stated above and consistent with the August 19, 2019 Final Pretrial Conference, the Court GRANTS the Defendant's Motion for an Order Establishing Facts at Trial [ECF No. 178].

ORDERED on August 21, 2019.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
